**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**KIM J. BONI-PHILLIPS,**

                              **Plaintiff,**

              **v.**                                    **1:11-CV-1071
                                                          (FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**APPEARANCES**                                   **OF COUNSEL**

**ERWIN, MCCANE & DALY**              **THOMAS C. ERWIN, ESQ.**
23 Elk Street
Albany, New York 12207
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **AMANDA J. LOCKSHIN, ESQ.**
**OFFICE OF REGIONAL GENERAL
COUNSEL - REGION II**
26 Federal Plaza   Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court are the parties' cross-motions for judgment on the pleadings.

*See* Dkt. Nos. 11, 15.

### II. BACKGROUND

    On June 1, 2009, Plaintiff filed applications for disability insurance benefits and

supplemental security income. *See* Administrative Record ("AR") at 81-82. After the Social Security Administration denied her disability claims in September, 2009, *see id.* at 83-90, Plaintiff requested review of that denial in the form of a hearing before an Administrative Law Judge ("ALJ"). *See id.* at 91. Subsequently, Plaintiff withdrew her application for disability insurance benefits but not her application for supplemental security income. *See id.* at 49-50.

ALJ Richard L. Waldman held a hearing in September 2010. *See id.* at 43-80. The ALJ issued a decision denying Plaintiff's application. *See id.* at 23-34. In reaching his decision, the ALJ made the following findings.

> 1. Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008.
>
> 2. Plaintiff had not engaged in substantial gainful activity since July 24, 2004, the alleged onset date.
>
> 3. Plaintiff had the following severe impairments: asthma, varicose veins, depression and polysubstance dependency.
>
> 4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> 5. Plaintiff had the residual functional capacity to perform light work, except no temperature extremes or exposure to environmental irritants and jobs with simple work-related activities, could work at least fifty percent of the work day in contact with co-workers, supervisors and the public and jobs with limited changes in routine work setting.
>
> 6. Plaintiff is unable to perform any past relevant work.
>
> 7. Plaintiff was born on January 24, 1961, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. Plaintiff has at least a high school education and is able to

communicate in English

9. Transferability of job skills was not an issue in this case because Plaintiff's last relevant work was unskilled

10. Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

Based on these findings, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 24, 2004, through the date of the decision, January 25, 2011.

By letter dated February 15, 2011, Plaintiff made a timely request to the Appeals Council of the Social Security Administration to review the ALJ's decision. *See* AR at 21. By Notice of Appeals Council Action, dated August 3, 2011, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-9.

Having exhausted her administrative remedies, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), seeking review of Defendant's final decision. *See* Dkt. No. 1. In support of her motion, Plaintiff argued that the ALJ erred in the following ways: (1) in determining that her attention deficit disorder was not a severe impairment, (2) in determining her RFC, and (3) in determining that she could perform jobs existing in significant numbers in the national economy.

## III. DISCUSSION

**A.** **Standard of review**

*1. Correct legal principles and substantial evidence*

A court reviewing a denial of disability benefits may not determine *de novo* whether an

individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). In reviewing an ALJ's decision, the court employs a two-prong test. First, the court must decide if the ALJ applied the correct legal principles. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation and other citation omitted).

The court must determine whether the ALJ applied the correct legal standards because

> [w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.

*Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Accordingly, the court will not uphold an ALJ's decision if it is based on an erroneous view of the law. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983).

If the court determines that the ALJ applied the correct legal principles, the court must then decide whether "substantial evidence" supports the ALJ's findings. *See Johnson*, 817 F.2d at 985 (citation omitted); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" is evidence that amounts to "'more than a mere scintilla,'" defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where evidence is deemed susceptible to more than one rational interpretation, the court must uphold the ALJ's conclusion. *See Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982) (citations omitted). If there is substantial evidence to support the ALJ's findings, the court must sustain those findings "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citations omitted); *see also Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) (citations omitted). In other words, the court must afford the ALJ's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

### 2. Five-step determination of disability

To be eligible for benefits, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). In addition, a claimant's

> [p]hysical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . .

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In evaluating disability claims, the ALJ follows a five-step sequential evaluation process:

> First, the [ALJ] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [ALJ] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [ALJ] will consider him disabled without considering vocational factors such as age, education, and work experience[.] . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [ALJ] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. § 404.1520, 416.920.

"[T]he claimant bears the burden of proving disability as to the first four steps." *Berry*, 675 F.2d at 467. If the claimant meets her burden, then the Commissioner has the burden of proof at the fifth step. *See id.*

**B.     Whether the ALJ erred at step two when he found that Plaintiff's attention deficit disorder was not "severe" within the meaning of the Act**

Section 416.920(c) of Title 20 of the Code of Federal Regulations provides that, "[i]f [the claimant does] not have any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities, [the Social Security Administration] will find that [she does] not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 416.920(c). For purposes of the Act, a "severe impairment" is statutorily

defined in Appendix 1.  *See* 20 C.F.R. § 416.920(d).

When evaluating the severity of mental impairments, an ALJ must apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis.  *See Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520(a)).  The ALJ must first determine whether the claimant has a medically determinable impairment.  *See* 20 C.F.R. § 404.1520a(b)(1).  After making that determination, the ALJ must assess the degree that the impairment impacts the claimant's ability to perform work-related activities in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *See* 20 C.F.R.  § 404.1520a(c)(3).  The ALJ must rate the claimant's functional limitations in these areas on a scale of "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  The ALJ must make "a specific finding as to the degree of limitation in each of the functional areas[.]"  20 C.F.R. § 404.1520a(e)(4).  If the degree of limitation in the first three areas is "mild" or "none" and there are no episodes of decompensation, the mental impairment is generally found non-severe.  *See* 20 C.F.R. § 404.1520a(d)(1).

At step two, the ALJ found that Plaintiff had the following severe impairments: asthma, varicose veins, depression and polysubstance dependency.  *See* AR at 28.  He also stated that "any deficits in attention and concentration would be consistent with the claimant's diagnosed depression as well as attributable to an attention deficit disorder, and any dysfunction in these areas will still be considered thoroughly regardless of the underlying cause."  *See id.* at 29.  The ALJ then proceeded through the sequential evaluation process, considering both Plaintiff's severe and non-severe impairments.  In the process of his review, the ALJ found that, given Plaintiff's

reports that she cooked, cleaned, and drove, Plaintiff's mental impairment imposed no limitations in the area of daily living. *See* AR at 29. With respect to Plaintiff's social functioning, the ALJ found that Plaintiff had "mild to at most moderate difficulties," citing her ability to relate well with family and medical personnel, as well as the fact that her problems interacting socially stemmed mostly from her attempt to avoid associating with friends who, like her, abused drugs. *See id.* The ALJ also found that Plaintiff suffered from no episodes of decompensation. *See id.* However, the ALJ found that Plaintiff had moderate difficulties in her ability to handle complex tasks, with particular difficulty in completing tasks promptly. *See id.*

Contrary to Plaintiff's assertions, in reaching his conclusions, the ALJ essentially adopted the findings of Drs. Bernier and Brand regarding limitations with respect to Plaintiff's attention and concentration. Dr. Bernier opined that Plaintiff's mental impairments caused her moderate to marked difficulty in understanding and carrying out complex instructions and in reacting to changes in routine in the work setting. *See* AR at 543. Similarly, Dr. Brand opined that Plaintiff had moderate difficulty in managing a regular work schedule and maintaining attention and concentration. *See id.* at 289. Moreover, he stated that Plaintiff required supervision to perform simple tasks. *See id.* The ALJ incorporated these opinions in his RFC determination, where he found that Plaintiff's mental impairments relegated her to jobs with simple tasks and limited changes in routine in the work setting. *See id.* at 30.

The record indicates that the ALJ thoroughly considered Plaintiff's attention deficit disorder in the five-step analysis. Thus, even if the ALJ erred in finding that Plaintiff's attention deficit disorder was not a severe impairment, any such error was harmless. *See Paquette v. Colvin*, No. 7:12-CV-1470, 2014 WL 636343, *5 (N.D.N.Y. Feb. 18, 2014) (citations omitted);

*Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (noting that, where an ALJ finds severe impairments at step two and considers the combined effect of all symptoms in making his determination, there is no error requiring remand).

**C.     Whether the ALJ erred in determining Plaintiff's RFC**

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptoms, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing [20 C.F.R.] §§ 404.1545, 416.945). To ascertain a claimant's RFC, an ALJ must assess her exertional capabilities, addressing her ability to sit, stand, walk, lift, carry, push and pull. *See* 20 C.F.R. § 404.1545(b). The ALJ must also consider nonexertional limitations or impairments, including impairments that result in postural and manipulative limitations. *See* 20 C.F.R. § 404.1545(b); 20 C.F.R. Pt. 404, Subpart P, Appendix 2, § 200.00(e).

The ALJ's "RFC determination is subject to the overarching requirement that [it] may only withstand judicial scrutiny if there is substantial evidence in the record to support each of its elements." *Crysler v. Astrue*, 563 F. Supp. 2d 418, 436 (N.D.N.Y. 2008); *see also Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997) (citations omitted). Additionally, the ALJ's RFC determination "must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence." *Ferraris*,

728 F.2d at 587 (citation omitted); *see also Perez v. Astrue*, 907 F. Supp. 2d 266, 273 (N.D.N.Y. 2012) (quotation omitted).

A review of the record demonstrates that there is substantial evidence to support the ALJ's RFC determination. The ALJ concluded that Plaintiff retained the RFC to perform light work, with the limitation that she must avoid extreme temperatures and exposure to environmental irritants. *See* AR at 30. In addition, he found that Plaintiff could work at least fifty percent of the work day in contact with coworkers, supervisors, and the public and should seek jobs that involved simple work-related activities and minimal changes in the routine of the work setting. *See id.* The regulations define light work as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm and leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

In reaching his conclusion about Plaintiff's RFC, the ALJ properly relied in part on Dr. Puri's functional assessments. Although Dr. Puri did find objective limitations in Plaintiff's functional capacity, those limitations were consistent with her ability to perform light work. *See* AR at 294, 530-37. After his first examination of Plaintiff, Dr. Puri opined generally that Plaintiff should refrain from lifting heavy weights. *See id.* at 294. Dr. Puri provided a more specific analysis after his second examination of Plaintiff when he opined that Plaintiff could lift objects up to twenty pounds continuously (for 2/3 of a work day) and up to fifty pounds

occasionally (for 1/3 of a workday). *See id.* at 532. Furthermore, Dr. Puri found Plaintiff capable of sitting for eight hours, standing for six hours, and walking for three hours in an eight hour work day. *See id.* at 533. Given that the opinion of Dr. Puri, a consultative examiner, was consistent with the other medical evidence in the record, the ALJ was justified in according it substantial weight. *See Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978, *4 (N.D.N.Y. June 7, 2010) (stating that "[i]t is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability" (citing 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2)) (other citation omitted); *see also Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (recognizing that the opinion of a consultative examiner can constitute substantial evidence (citations omitted)). Dr. Puri's opinion was essentially consistent with that of Dr. Auerbach, a state agency review physician, who opined that Plaintiff was capable of lifting twenty pounds occasionally and ten pounds frequently, standing or walking six to eight hours and sitting six to eight hours, provided she avoided concentrated exposure to dust and fumes. *See* AR at 302.

Although other medical personnel commented on various aspects of Plaintiff's condition, only Drs. Puri and Auerbach specifically addressed Plaintiff's work-related physical capacity. Moreover, their opinions were consistent with other clinical findings in the medical record, including that Plaintiff retained full motion and sensation and that there was no tenderness, bleeding, drainage, or hardening, despite her varicose veins. *See* AR at 272-73. Furthermore, Plaintiff stated that she engaged in yard work and gardening. *See id.* at 71, 74. Given that the

-11-

ALJ properly relied on expert medical opinions that were consistent with the record as a whole, there was substantial evidence in the record to support his conclusion that Plaintiff was able to meet the physical exertional requirements of light work.

In addition, the ALJ adequately accounted for Plaintiff's sensory limitations. *See* 20 C.F.R. § 416.945(a)(4). For instance, the ALJ accounted for Plaintiff's asthma by adopting the recommendations of Drs. Puri and Auerbach that Plaintiff should avoid work environments that might exacerbate her respiratory problems. *See* AR at 30-33, 302, 530-37.

There is also substantial evidence in the record to support the ALJ's findings regarding the nonexertional aspect of Plaintiff's RFC. In September 2009, Dr. Bruni opined that Plaintiff was "capable of sustaining a daily routine and meeting the production and attendance requirements of regular competitive employment." *See* AR at 320. Dr. Bruni's expert opinion, which was entitled to consideration, *see* 20 C.F.R. § 416.927, contradicted Plaintiff's assertion that she was incapable of performing work with a production or quota demand.

The medical record as a whole also supported the ALJ's determination that Plaintiff could interact with coworkers, supervisors, and the public for at least fifty percent of the work day. Dr. Bernier opined that Plaintiff would have mild to moderate difficulty interacting with coworkers, supervisors and the public. *See id.* at 544. Similarly, Dr. Brand opined that Plaintiff "might have moderate difficulty . . . relating adequately with others." *See id.* at 289. However, Dr. Bruni stated that Plaintiff was able to work in a "regular competitive environment." *See id.* at 320. Moreover, Plaintiff's work history supported the ALJ's finding that Plaintiff was able to interact adequately in a work environment. First, Plaintiff cited leg pain, not problems with associates or the public, as her primary reason for stopping her previous work as a hair dresser. *See* AR at 52.

Second, she reported on her June 2009 application that she had no problems "getting along with family, friends, neighbors or others," *see id.* at 193, or cooperating with "bosses, teachers, police, landlords, or other people in authority," *see id.* at 194.

Based on the above-stated evidence in the record, the Court finds that there was substantial evidence in the record to support the ALJ's determination that Plaintiff was capable of interacting with coworkers, supervisors, and the public for at least fifty percent of the work day.

Finally, the ALJ noted that Plaintiff suffered from moderate limitations in the area of concentration, persistence, or pace. *See id.* at 20. He duly accounted for this limitation in his RFC determination, where he found that Plaintiff was relegated to jobs with simple work-related activities. *See id.* at 30. In doing so, the ALJ gave appropriate consideration to Drs. Brand's and Bernier's opinions that Plaintiff would experience problems handling complex tasks. *See id.* at 289, 544. Furthermore, in light of Drs. Brand's and Bernier's opinions that Plaintiff would have moderate difficulty in dealing with changes in the work environment, *see id.*, the ALJ incorporated certain restrictions in Plaintiff's RFC, by limiting her jobs to ones that included limited changes in routine work setting. *See id.* at 30.

Given the substantial evidence in the record to support the ALJ's findings regarding Plaintiff's ability to meet the physical exertional requirements of light work and his incorporation of Plaintiff's sensory and nonexertional limitations into his RFC assessment, the Court finds that the ALJ did not err in his determination that Plaintiff's could perform light work.

**E. Whether the ALJ erred in determining that Plaintiff could perform jobs existing in significant numbers in the national economy**

At the fifth and final step of the evaluative process, the ALJ concluded that, in light of Plaintiff's age, education, work experience, and RFC, she could perform jobs that exist in significant numbers in the national economy. *See* AR at 33. Since Plaintiff suffered from additional limitations that prevented her from performing all or substantially all of the requirements of the light work, the ALJ asked a vocational expert to determine what jobs, if any, Plaintiff could perform. *See id.* The vocational expert opined that Plaintiff could meet the requirements of representative jobs such as photocopy machine operator, clerical checker, and addresser. *See id.* The vocational expert estimated that 325,000 such jobs existed in the national economy and that they required minimal contact with coworkers and contact with supervisors only about fifty percent of the time. *See id.*

Plaintiff takes issue with the hypothetical which the ALJ presented to the vocational expert. In that hypothetical, the ALJ stated as follows:

> [a]ssume a hypothetical individual who was born on . . ., 1961, has a least a high school education and is able to communicate in English as defined in 20 CRF 404.1564 and 416.964, and has work experience as described in your response to question #6.[1] Assume further that this individual has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except is limited to jobs involving simple work-related decisions and instructions; interaction with the public, supervisors and co-workers no more than 50% of the work day; jobs with limited changes in routine work setting; and limited exposure to environmental irritants.

---

[1] Question #6 asked if Plaintiff had had work experience within the past 15 years. *See* Dkt. No. 9-6 at 52. The vocational expert answered that Plaintiff had worked as a hairdresser during that time period. *See id.*

-14-

*See* Dkt. No. 9-6 at 53.

Despite Plaintiff's argument to the contrary, this hypothetical was proper because there was substantial evidence to support its underlying assumptions. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (quotation omitted). Therefore, the ALJ was justified in adopting the vocational expert's conclusion that Plaintiff could work as a photocopy machine operator, clerical checker and addresser. For all these reasons, the Court finds that the ALJ's determination that Plaintiff could perform jobs existing in the national economy was not in error.

### IV. CONCLUSION

After reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2014
       Syracuse, New York

                                         Frederick J. Scullin, Jr.
                                         Senior United States District Court Judge